# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| JOSHUA K. HABIB,<br>    Plaintiff, | : <br> : <br> : | CASE NO. 3:19-cv-823 (MPS) |
| v. | : <br> : <br> : | |
| CORRECTIONAL MANAGED<br>HEALTH CARE, et al.,<br>    Defendants. | : <br> : <br> : | July 11, 2019 |

---

## INITIAL REVIEW ORDER

Plaintiff Joshua K. Habib incarcerated at the Osborn Correctional Institution in Somers, Connecticut, filed this case under 42 U.S.C. § 1983. The plaintiff names nine defendants, former Commissioner Scott Semple, Dr. Syed Naqvi, Drs. John Doe #1-#4, Robert Daddona, Correctional Managed Health Care and the Department of Correction. He contends that the defendants unreasonably denied and delayed medical care in violation of his rights under the Eighth Amendment. The plaintiff seeks an award of damages from the defendants in their individual capacities.

The Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. This requirement applies to all prisoner filings regardless whether the prisoner pays the filing fee. *Nicholson v. Lenczewski*, 356 F. Supp. 2d 157, 159 (D. Conn. 2005) (citing *Carr v. Dvorin*, 171 F.3d 115 (2d Cir. 1999) (per curiam)). Here, the plaintiff is proceeding *in*

*forma pauperis.*

Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a plausible right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted).

"Although courts must interpret a pro se complaint liberally, the complaint will be dismissed unless it includes sufficient factual allegations to meet the standard of facial plausibility." *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations omitted).

I.      Allegations

On July 30, 2017, defendant Daddona asked the plaintiff to be a volunteer painter. ECF No. 1. ¶ 17. He told the plaintiff the job would afford him an opportunity to get out of his cell for the day. *Id.*, ¶ 18. The plaintiff said that he had no official training for painting but agreed to work so he could spend the day out of his cell. *Id.*, ¶ 19. Defendant Daddona directed the plaintiff and three other inmates to gather paint supplies and a wheeled ladder from the supply closet and brought them to an office on the third floor of the New Haven Correctional Center. *Id.*, ¶¶ 20-21. Defendant Daddona ordered the plaintiff to use the ladder to paint hard-to-reach areas. *Id.*, ¶ 22.

Defendant Daddona twice left the inmates alone, locked in the office. They were

unsupervised for about an hour each time. *Id.*, ¶ 25. Defendant Daddona's actions in recruiting

the inmates for the painting job, providing no training, and leaving them unsupervised violated

Department of Correction Administrative Directives. *Id.*, ¶¶ 23-34, 26.

At 1:00 p.m., during the second time the inmates were left alone, the plaintiff fell

backwards off the ladder. He landed on his right arm/wrist breaking it. *Id.*, ¶ 27. The plaintiff

was unable to seek immediate medical attention because he was locked in the office without a

correctional officer present. *Id.*, ¶ 28. The other inmates began banging on the door to attract an

officer. About twenty minutes later, Correctional Officer Wilkes unlocked the door,

acknowledged the plaintiff's injury, and escorted him to a control bubble to call in the incident.

*Id.*, ¶ 29.

Correctional Officer Whaller, who was working in the control bubble, expressed

frustration that the inmates were left unsupervised. *Id.*, ¶ 30. Correctional Officer Wilkes then

escorted the plaintiff to the medical unit where the staff arranged for his transfer to the UConn

Health Center. *Id.*, ¶¶ 31-32.

While he was waiting for the transport vehicle, two lieutenants questioned the plaintiff

about how he was injured. Defendant Daddona arrived in the medical unit and forced the

plaintiff to exclude the fact that he was injured while using the wheeled step-ladder. In addition,

defendant Daddona answered the lieutenants' questions for the plaintiff. As a result the incident

report contains a different version of the incident. *Id.*, ¶ 33. The plaintiff was in severe pain and

did not care which version of the incident was included in the incident report. *Id.*, ¶ 34.

Officers Wilkes and Hines escorted the plaintiff to UConn at about 2:00 p.m. *Id.*, ¶ 35.

The plaintiff's arm/wrist was x-rayed and diagnosed as fractured. An orthopedic specialist re-set

the bones and a cast was applied from wrist to shoulder. *Id.*, ¶ 36. Officers Wilkes and Hines

returned the plaintiff to the correctional facility at about 11:00 p.m., the same day. *Id.*, ¶ 37.

On August 7, 2017, the plaintiff submitted a request form to Lieutenant Mendillo asking

him to preserve the surveillance footage from the date of the incident. Although the office did

not include a camera, surveillance footage from the surrounding corridors would show that

defendant Daddona left the inmates unsupervised. The plaintiff did not receive a response to his

request. *Id.*, ¶ 38.

On August 11, 2017, the plaintiff returned to UConn for a consultation on his fracture.

*Id.*, ¶ 39. The orthopedic specialist advised the plaintiff to keep his arm elevated and to be gentle

with it because the bones could easily be displaced. The specialist ordered that x-rays be taken at

the correctional facility and requested a follow-up examination in 1-2 weeks. *Id.*, ¶ 40.

On August 14, 2017, APRN Koslawy submitted a request to the Utilization Review

Committee ("URC") seeking an orthopedic follow-up. The doctors on the committee,

defendants John Does #1-#4, denied the request. *Id.*, ¶ 41. On September 7, 2017, APRN

Koslawy submitted a second request for a follow-up orthopedic visit. This request was

approved. *Id.*, ¶ 42.

On September 11, 2017, the plaintiff was transferred to Walker Correctional Institution

("WCI"). *Id.*, ¶ 43. On September 29, 2017, he was brought to UConn for the orthopedic

follow-up visit. The plaintiff's arm was x-rayed and the cast removed. *Id.*, ¶ 44. The specialist

told the plaintiff that he did not need formal physical therapy. Instead, he gave the plaintiff

range of motion exercises to perform five times per day. *Id.*, ¶ 45.

The plaintiff submitted several medical requests complaining that the range of motion in

his right wrist was not returning to normal despite performing the prescribed exercises. On October 27, 2017, the plaintiff saw an APRN in the WCI medical unit. The APRN advised the plaintiff to continue doing the exercises and said that, if his range of motion did not improve in a month, further treatment would be requested. *Id.*, ¶ 46.

On November 2, 2017, the plaintiff was transferred to MacDougall Correctional Institution ("MCI"). *Id.*, ¶ 47. During November and December 2017, the plaintiff submitted several requests to the MCI medical unit complaining that the range of motion in his right wrist was not improving and that he was experiencing shooting pain when he turned his wrist. He also explained how the limited range of motion affected his daily activities. *Id.*, ¶ 48.

Defendant Dr. Naqvi saw the plaintiff on December 31, 2017. The plaintiff explained that his range of motion had not improved even though he had been consistently performing the exercises. *Id.*, ¶ 49. The plaintiff stated that he was unable to perform simple tasks such as brushing his teeth, tying his shoes, and opening a door with his right hand. The plaintiff is right-handed and was forced to try to write with his left hand. *Id.*, ¶ 50. The plaintiff told Dr. Naqvi that he has extreme difficulty climbing to the top bunk because he cannot put any weight on his right wrist and has fallen several times. He asked Dr. Naqvi for a bottom bunk pass. The plaintiff also told Dr. Naqvi about the shooting pain in his wrist. *Id.*, ¶ 51.

Dr. Naqvi denied the bottom bunk pass. *Id.*, ¶ 52. He told the plaintiff that the state would not pay for frivolous treatment such as physical therapy but refused to put his statement in writing. *Id.*, ¶ 53. Although he is not an orthopedist, Dr. Naqvi merely told the plaintiff to continue to do the range-of-motion exercises. He did not submit a URC request for an orthopedic consult. *Id.*, ¶¶ 54-55.

5

The plaintiff submitted requests to the MCI medical unit from January through March 2018 complaining about his range of motion, his inability to perform simple tasks, the shooting pain, and his difficulty climbing to the top bunk. *Id.*, ¶ 56. On April 1, 2018, Dr. Naqvi saw the plaintiff again. *Id.*, ¶ 57. When the plaintiff repeated his complaints, Dr. Naqvi said that range-of-motion limitations are normal for the type of wrist injury that the plaintiff suffered and again denied a bottom bunk pass. He did not submit a URC request. *Id.*, ¶¶ 58-61.

From April through June 2018, the plaintiff submitted more request forms to the medical unit. *Id.*, ¶ 62. On July 5, 2018, APRN Spano Lonis saw the plaintiff in the medical unit. The plaintiff again explained his issues. *Id.*, ¶ 63. APRN Lonis issued the plaintiff a bottom bunk pass and submitted a URC request for an orthopedic consult. The request was approved. *Id.*, ¶¶ 64-65.

On July 18, 2018, the plaintiff was transferred to Osborn Correctional Institution. *Id.*, ¶ 66. On July 24, 2018, Dr. Wright saw the plaintiff in the medical unit. After the plaintiff explained his issues, Dr. Wright issued him a bottom bunk pass and told the plaintiff that he was scheduled to be seen by the orthopedist at UConn. *Id.*, ¶ 67.

The orthopedic consultation occurred on August 3, 2018. *Id.*, ¶ 68. The doctor determined that the plaintiff needed aggressive physical therapy. *Id.*, ¶ 69. He was frustrated that a year had passed without any prescription for physical therapy and stated that, because of the length of time since the injury, the plaintiff's range of motion would not be as good as it would have been if physical therapy had been prescribed when the cast was removed. *Id.*, ¶ 70.

On August 27, 2018, the plaintiff received a letter from Attorney Jenna Bessette at Inmates' Legal Aid Program ("ILAP"). Attorney Bessette had provided the plaintiff's medical

records to ILAP's medical professional. The professional opined that the plaintiff needed extensive physical therapy and treatment of the affected joint. *Id.*, ¶¶ 71-72. The professional also stated that there was a large cyst in the plaintiff's wrist bone. The condition is rare but can cause swelling, pain, and decreased range of motion. *Id.*, ¶ 73.

During August and September 2018, the plaintiff submitted medical requests asking when he would receive physical therapy. *Id.*, ¶ 74. On October 19, 2018, the plaintiff saw Dr. Wright and asked why he had not received physical therapy as recommended by the orthopedist. Dr. Wright said that he did not request physical therapy because the recommendation was vague and did not directly order physical therapy. *Id.*, ¶ 75. He did submit a URC request for an orthopedic consultation, which was approved. *Id.*, ¶ 76.

The consultation was held on November 16, 2018. *Id.*, ¶ 77. The plaintiff saw the same orthopedist he saw in August. The orthopedist concluded that the plaintiff needed formal physical therapy and clearly included that recommendation in the plaintiff's medical records. *Id.*, ¶ 78. On November 19, 2018, Dr. Wright submitted a URC request for physical therapy. The request was approved. *Id.*, ¶ 79.

On January 11, 2019, the plaintiff was transported to UConn for his first physical therapy session. *Id.*, ¶ 80. The one-year delay in providing physical therapy has resulted in permanent range-of-motion issues. The plaintiff cannot perform daily tasks without experiencing severe pain in his arm and wrist. *Id.*, ¶ 81.

II.     Analysis

The plaintiff contends that defendants Naqvi, Semple, Correctional Managed Health Care, and Department of Correction were deliberately indifferent to his serious medical needs.

7

He also alleges that defendant Daddona was negligent in his supervision of the inmates on the painting job. Department of Correction records show that the plaintiff was sentenced on August 30, 2017. www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=356628 (last visited June 12, 2019). Thus, he was a pretrial detainee at the time of the incident but a sentenced inmate during the period when he challenges his medical treatment.

A.    Correctional Managed Health Care and Department of Correction

The plaintiff includes Correctional Managed Health Care and the Department of Correction as defendants. However, neither a state agency nor any subdivision thereof is considered a person within the meaning of section 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70 (1989) (Eleventh Amendment immunity extends to "government entities that are considered 'arms of the State'"). The Department of Correction is a state agency and Correctional Managed Health Care is a unit of state agency University of Connecticut Health Care. Thus, they are not persons within the meaning of section 1983. *See Angileri v. Wu*, No. 3:16-cv-352(SRU), 2016 WL 3579073, at *3 (D. Conn. June 28, 2016) (Department of Correction); *Ferla v. Correctional Managed Health Care*, No. 3:15-cv-1303(MPS), 2015 WL 5826812, at *12 (D. Conn. Oct. 2, 2015) (Correctional Managed Health Care). The claims against these two defendants are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

B.    Drs. Naqvi and Does #1-#4

The Eighth Amendment forbids deliberate indifference to prisoners' serious medical needs. *Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013). To state a claim for deliberate indifference to a serious medical need, the plaintiff must show both that his medical need was serious, and that the defendant acted with a sufficiently culpable state

8

of mind.  *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (citing *Estelle v. Gamble*, 492 U.S. 97, 104 (1976)).  There are both objective and subjective components to the deliberate indifference standard.  *See Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994).  Objectively, the alleged deprivation must be "sufficiently serious."  *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).  The condition must produce death, degeneration, or extreme pain.  *See Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996).  Subjectively, the defendant must have been actually aware of a substantial risk that the plaintiff would suffer serious harm as a result of his actions or inactions.  *See Salahuddin*, 467 F.3d at 279-80.  Negligence that would support a claim for medical malpractice does not rise to the level of deliberate indifference and is not cognizable under section 1983.  *See id.*

The plaintiff alleges that he suffered a fractured wrist and experienced pain and reduced range of motion for a year.  The Court accepts, for purpose of this initial review only, that the plaintiff suffered a serious medical need.  *See Jones v. Lantz*, No. 3:09-cv-747(VLB), 2011 WL 2144651, at *7 (D. Conn. May 31, 2011) (noting differing conclusions among the courts of appeal regarding whether a broken wrist is a serious medical need and assuming, without deciding, that plaintiff's fractured wrist and delay in treatment was serious medical need); *see also Baeman v. Unger*, 838 F. Supp. 2d 108, 110 (W.D.N.Y. 2011) (accepting for purposes of motion to dismiss that allegation of significant pain and swelling from bone fractures demonstrated serious medical need).

Subjectively, the plaintiff argues that, if Dr. Naqvi had ensured that he received the physical therapy he clearly needed, the plaintiff would not have experienced a year of severe pain and risk of injury from falling from his bunk.  ECF No. 1, ¶ 82.  The plaintiff further argues

that Dr. Naqvi was aware that the plaintiff was falling off his bunk but did not issue a bottom bunk pass and knew both that the plaintiff's range-of-motion issues were severe and required services of a specialist but did not request an orthopedic consultation. *Id.*, ¶ 103-04. He also contends that if the URC members had approved his first request for removal of his cast and a follow-up orthopedic consultation, he would have started his range-of-motion exercises months earlier. *Id.*, ¶¶ 83, 111.

Dr. Naqvi treated the plaintiff while he was at MCI, from November 2017 until July 2018. During that time, Dr. Naqvi saw the plaintiff twice, on December 31, 2017, and April 1, 2018. Upon removal of the cast, the orthopedist recommended range-of-motion exercises, not physical therapy. Over the following months, however, the plaintiff submitted numerous medical requests stating that the exercises were not working. He alleges that Dr. Naqvi categorically refused to prescribe physical therapy or seek further orthopedic consultations. Dr. Naqvi also refused to issue a bottom bunk pass despite the plaintiff's claims that his wrist condition rendered him unable to put pressure on it when climbing to the top bunk resulting in several falls. Crediting the plaintiff's allegations, as the Court must when conducting an initial review, the Court considers the complaint to allege a plausible claim against Dr. Naqvi for deliberate indifference to a serious medical need.

The plaintiff alleges that Drs. Doe were deliberately indifferent to his medical needs because they denied the first URC request for follow-up and removal of his cast as ordered by the specialist. He contends that, if that visit had been approved, he would have started his range-of-motion exercises months earlier and would have avoided the pain and range-of-motion issues. ECF No. 1, ¶ 83.

The plaintiff fractured his wrist and had the initial treatment on July 30, 2017. He had a

follow-up visit on August 11, 2017. The URC denied the August 14, 2017, request for another

follow-up visit, but approved the September 7, 2017 request and all subsequent requests. *Id.*, ¶¶

39, 41, 42. The cast was removed on September 29, 2017, approximately eight weeks after the

fracture. *Id.*, ¶ 44. The consultation form indicates that an x-ray showed only minimal healing.

*Id.* at 56.

The medical records appended to the complaint show no indication that the follow-up

visit would have occurred earlier or the cast would have been removed earlier had the URC

approved the August 14, 2017 request. The Court considers this claim lacking in facial

plausibility. Accordingly, the claim against Drs. Doe #1-#4 is dismissed pursuant to 28 U.S.C. §

1915A(b)(1).

C.      Commissioner Semple

The plaintiff alleges that defendant Semple was deliberately indifferent to his medical

needs because he was aware that the medical units were understaffed but did not address the

issue thereby causing inmates to suffer unnecessary pain. ECF No. 1, ¶ 112. The plaintiff does

not allege that Commissioner Semple was specifically aware of his circumstances. Rather, his

claim is based on Commissioner Semple's duty as commissioner to provide reasonable medical

care for all inmates.

> To state a claim for supervisory liability, a plaintiff must establish that: (1) the
> defendant participated directly in the alleged constitutional violation, (2) the
> defendant, after being informed of the constitutional violation through a report or
> appeal, failed to remedy the wrong, (3) the defendant created a policy or custom
> under which the unconstitutional practices occurred, or allowed the continuance
> of such a policy or custom, (4) the defendant was grossly negligent in supervising
> subordinates who committed the wrongful acts, or (5) the defendant exhibited

deliberate indifference … by failing to act on information indicating that
unconstitutional acts were occurring.

*Shaw v. Prindle*, 661 F. App'x 16, 18 (2d Cir. 2016) (quoting *Colon v. Coughlin*, 58 F.3d 865,

873 (2d Cir. 1995)); *see also Merriwether v. Coughlin*, 879 F.2d 1037, 1048 (2d Cir. 1989) (to

impose supervisory liability prisoner must allege that official had actual or constructive notice of

unconstitutional practices and demonstrated gross negligence or deliberate indifference by failing

to act).

The plaintiff alleges that Commissioner Semple was aware through testimony in various

proceedings of the deficiencies in the provision of medical care to Connecticut inmates. ECF

No. 1, ¶¶ 92-95. The Court considers these allegations sufficient to support a plausible claim for

supervisory liability under the third and fifth *Colon* factors. The claim against Commissioner

Semple will proceed at this time.

D.     Officer Daddona

The plaintiff contends that defendant Daddona was negligent in leaving him unattended

and failing to provide proper training. ECF No. 1, ¶¶ 107-10. The plaintiff was a pretrial

detainee at the time of the incident. Thus, his claims would be considered under the Fourteenth,

rather than the Eighth, Amendment. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017)

(claims of pretrial detainees regarding conditions of confinement are considered under the

Fourteenth Amendment while claims of sentenced prisoners are considered under the Eighth

Amendment).

Even for pretrial detainees, however, a claim of negligence is not cognizable under

section 1983. *See Kingsley v. Hendrickson*, ___ U.S. ___, 135 S. Ct. 2466, 2472 ("[L]iability

12

for negligently inflicted harm is categorically beneath the threshold of constitutional due process"); *Darnell*, 849 F.3d at 36 ("any § 1983 claim for a violation of due process requires proof of a *mens rea* greater than mere negligence"). Accordingly, the plaintiff's negligence claim is not cognizable under section 1983 and is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

Further, to the extent that the plaintiff is asserting a state law negligence claim, it must be dismissed. Connecticut General Statutes § 4-165 provides: "No state officer or employee shall be personally liable for damages or injury, not wanton or reckless or malicious, caused in the discharge of his duties or within the scope of his employment." Defendant Daddona is employed by the Department of Correction, a state agency. The plaintiff has named defendant Daddona only in his individual capacity and seeks only damages. As he is protected from liability for damages by statute, any supplemental state law claim for negligence must be dismissed as seeking "monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(2).

III.    Conclusion

The federal claims against defendants Daddona and Does #1-#4 are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1). The state law negligence claim against defendant Daddona is **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(2). The case will proceed on the deliberate indifference claim against defendant Naqvi and the supervisory liability claim against defendant Semple.

The Court enters the following orders:

(1)     **The Clerk shall** contact the Department of Correction Office of Legal Affairs to ascertain the service or current work address for defendants Naqvi and Semple, mail a waiver of service of process request packet containing the Complaint to them at the addresses provided within **twenty-one (21) days** of this Order, and report to the court on the status of the waiver requests on the thirty-fifth day after mailing.  If either defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on him in his individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(2)     **The Clerk shall** send the plaintiff a copy of this Order.

(3)     **The Clerk shall** send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(4)     The defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver form is sent.  If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above.  They also may include all additional defenses permitted by the Federal Rules.

(5)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this order.  Discovery requests need not be filed with the court.

(6)     All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this order.

(7)     Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed.  If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(8)     If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that the plaintiff MUST notify the court.  Failure to do so can result in the dismissal of the case.  The plaintiff must give notice of a new address even if he is incarcerated.   The plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If the plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address.  The plaintiff should also notify the defendant or the attorney for the defendant of his new address.

(9)     The plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court.  The plaintiff is advised that the Program may be used only to file documents with the court.  Local court rules provide that discovery requests are not filed with the court.  D. Conn. L. Civ. R. 5(f). Therefore, discovery requests must be served on defendants' counsel by regular mail.

(10)     The Clerk shall enter the Standing Order Re: Initial Discovery concerning inmate cases initiated by self-represented inmates and shall send a copy to the plaintiff.

**SO ORDERED** this 11ᵗʰ day of July 2019 at Hartford, Connecticut.

/s/
_____
Michael P. Shea
United States District Judge
